UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CALVIN DWIGHT WARE,

       Petitioner,

    v.

SHIRLEE A. HARRY,

       Respondent.[1]
_____/

CASE NO. 2:06-CV-10553
JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE PAUL J. KOMIVES


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.   *Confrontation (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.   *Jury Instruction Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    F.   *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    G.   *Sufficiency of the Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    H.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

_____

[1]By Order entered this date, Shirlee A. Harry has been substituted for Kenneth Romanowski as the proper respondent in this action.

I.    <u>RECOMMENDATION</u>: With respect to petitioner's claim that counsel was ineffective for failing to investigate and present the testimony of Ezell Robinson, the Court should conduct an evidentiary hearing to determine whether (a) petitioner's counsel rendered deficient performance with respect to Robinson's testimony, and (b) petitioner was prejudiced by the absence of Robinson's testimony. The Court should deny petitioner's application for the writ of habeas corpus in all other respects.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Calvin Dwight Ware is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

2.    On August 7, 2003, petitioner was convicted of first degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), following a jury trial in the Wayne County Circuit Court. On September 8, 2003, he was sentenced to a mandatory term of life imprisonment without possibility of parole.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN ADMISSION OF THE UNSIGNED, UNSWORN STATEMENT OF A NON-TESTIFYING WITNESS, VIOLATING HIS CONSTITUTIONAL RIGHT OF CONFRONTATION.

II.    DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT REFUSED TO GIVE THE REQUESTED JURY INSTRUCTION.

Petitioner raised two additional claims in a *pro se* supplemental brief:

III.     DEFENDANT-APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL, DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL.

IV.     THE PROSECUTOR FAILED TO PROVIDE SUFFICIENT EVIDENCE TO SUSTAIN A JURY VERDICT OF GUILTY OF FIRST DEGREE PREMEDITATED MURDER, M.C.L.A. 750.316(A).

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Ware*, No. 251048, 2005 WL 563216 (Mich. Ct. App. Mar. 10, 2005) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these four issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Ware*, 474 Mich. 873, 703 N.W.2d 816 (2005).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 9, 2006. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the state courts.

6.     Respondent filed her answer on September 5, 2006. She contends that petitioner's claims are without merit.

7.     Petitioner filed a reply to respondent's answer on October 11, 2006.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted of murder in connection with the killing of Leroy Rankins. As noted by the Michigan Court of Appeals, the primary evidence against petitioner consisted of his own statement to the police and statements given to the policy by a witness, Constance Harrell. *See Ware*, 2005 WL 263216, at *1, slip op. at 1. As accurately set forth in more detail in respondent's brief, the following evidence was adduced at trial:

Lanze Newman, a Detroit police officer assigned to the homicide section

3

advised Petitioner of his constitutional rights and took a statement from him. 8/6, pp 46-50. Petitioner said Tommy Reese told him to go to the house on Melrose and check on Leroy Rankins (a.k.a. "Reno") who was short on the money he owed to Reese: "he told me to kick his ass, and if you know Tommy, you either do it or you're next." 8/6, pp 52. Petitioner went to the house and asked Rankins to see the bags of crack; Petitioner determined Rankins was $250.00 short. Petitioner told Rankins that was "bullshit." Rankins put the bags in his pocket and stood up. That's when Petitioner "fired" on him.[2] Rankins staggered to the couch but did not fall. He had a knife in his hand and put it up in the air to stab Petitioner. Petitioner saw the stick, grabbed it and hit Rankins on the head. He saw Rankins fall to the floor. Petitioner threw the stick to Ezell Robinson, Jr. (a.k.a. "Man"). 8/6, pp 52-53. Petitioner stated he hit Rankins one time and he wasn't trying to kill him. He stated he left and did not go back for two days. Petitioner said Reese's wife told him Rankins was dead; he denied knowing what had happened to the body. 8/6, p 54.

Petitioner said he had given $2,000.00 worth of crack to his cousin to sell; his cousin left town and Petitioner had not seen him since then. Petitioner owed Reese the money. After the killing, Reese told Petitioner not to stop "coming around." Petitioner feared Reese might "set him up." Petitioner told his girlfriend that if anything ever happened to him, Reese would be responsible. Petitioner feared that because he owed Reese money and Reese did not know him well — he might believe Petitioner would tell about his dope game — Reese might kill him. 8/6, pp 53, 55-56.

Outside the presence of the jury, the trial court heard testimony from Kurtiss Staples and James Fisher to determine whether the prosecutor would be permitted to introduce the statement of Constance Harell as an exception to the hearsay rule, M.R.E. 804(b)(6).

Kurtiss Staples, the officer in charge of the case, testified that he had spoken to Constance Harrell in February after the first preliminary examination. Harrell told him she did not appear for the exam because she did not have a ride to court, but also because she was afraid for her safety and that of her family. 8/6, pp 65-70. Harrell kept in touch with Staples; she called him once a month and she continued to tell him how afraid she was to testify. Staples knew Harrell lived in Port Huron, but the police there were not successful in contacting her. Staples spoke to Harrell on July 27th, and she said she did not want to testify because she was afraid for her safety. After a twenty minute conversation, she agreed to come in, but she did not. Attempting to locate Harrell, Staples did a LEIN check, called the local hospitals, jails and the morgue, but did not find her. He also checked the neighborhood where the killing took place, but she had not been there. She no longer lived at the Port Huron address. 8/6, pp 70-73.

James Fisher, an investigator in the homicide section of the Detroit Police Department, took a statement from Constance Harrell on 12/4/02 at 10:15 p.m.

---

[2]The crime did not involve a handgun. "Fired" in this context means that petitioner assaulted the victim with his fists.

Harrell told him she was in the house, a known crack house, when Leroy Rankins had a dispute with Petitioner over money. Petitioner picked up a table leg and hit the victim while his back was turned — "beat him about the head with this table leg until he went unconscious." Petitioner then threatened everybody present: "I know everybody in this house right now. If this shit go any further y'all next." Nobody called 911 because they were afraid. Petitioner said "he would kill us too." 8/6, pp 105-106.

Fisher explained that on the day of the preliminary examination, he had had a long conversation with Harrell; she expressed great concern about testifying because Petitioner knew her and she was afraid he would make good his threat to kill her. On the day she gave her statement to Fisher, Harrell was literally shaking with fear as she described what Petitioner had done. Fisher said she was fearful every time he talked to her. 8/6, p 117.

After hearing the testimony of Staples and Fisher as well as the arguments of counsel, the trial court found that Constance Harrell had spoken to Staples as late as July 27 (about ten days before trial) and she was afraid to come to court to testify because of Petitioner's threat. The court ruled the requirements of M.R.E. 804(b)(6) were satisfied and permitted the admission of Harrell's statement. 8/6, pp 128-132.

When the jury returned, Kurtiss Staples took the stand and read the first statement Constance Harell gave, December 4, 2002 at 2:40 a.m., in which she said she didn't know anything about the murder of Leroy Rankins. 8/6, pp 148-152. After Harell gave the statement she left police headquarters. 8/6, p 167.

James Fisher read the statement Harrell gave to him after being advised of her constitutional rights on December 4, 2002 at 10:15 p.m. Harrell said she, Ezell Robinson, Deandrea Williams, Tiffany Hemdon, and "Reno" (Leroy Rankins) were at the Melrose house when Petitioner pulled up in the alley across the street. Robinson went across the street and talked to Petitioner. When the house cleared of customers, Robinson whistled and Petitioner came into the house. Petitioner talked to Reno; he told Reno he'd been getting complaints that he'd been short all week. Reno took his bags out and poured them onto the table. Petitioner counted and said, "Nigga you $200.00 short." Reno replied, "I don't know what happened." 8/6, p 178. Petitioner turned as though walking out the door. He reached down and grabbed a table leg from the corner by the front door and walked back over to Reno. Harrell saw Petitioner swing the table leg and hit Reno in the head; Reno fell halfway on the couch and floor. Harrell saw Reno twitch. Then he stopped twitching and he didn't move at all. Harrell ran up the stairs and Petitioner came over to the stairs and started calling her. Petitioner told her to come back down stairs and she did. 8/6, pp 178-179. Then Petitioner told everybody: "I know everybody in this house right now. If this shit go any further y'all next." 8/6, p 179. Then Petitioner and Robinson lifted Reno off the floor and put him on the couch where he remained unresponsive. Petitioner covered the body with a blanket and left. Petitioner came back an hour or two later with a white guy. They wrapped Reno's body in a piece of carpet from the basement. They took it outside and put it in a reddish colored Geo Tracker. Petitioner told Sunshine to clean up the blood on the couch. No one called the police because

they were all afraid Petitioner would kill them too. The next day, Petitioner was back at the house bragging about what he had done. 8/6, pp 180-181.

Answer, at 2-5.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

6

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Confrontation (Claim I)*

Petitioner first contends that he was denied his Sixth Amendment right to confront the witnesses against him when the prosecution was permitted to introduce the hearsay statements of Constance Harrell. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). At the time of petitioner's trial, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). In *Roberts*, the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings. Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.

As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id*. at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id*. at 68-69.

In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive

definition of 'testimonial.'" *Crawford*, 541 U.S. at 68.  The Court did, however, provide some

guidance.  Specifically, the Court provided three possible "formulations of th[e] core class of

'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as
> affidavits, custodial examinations, prior testimony that the defendant was unable to
> cross-examine, or similar pretrial statements that declarants would reasonably expect
> to be used prosecutorially; [2] extrajudicial statements contained in formalized
> testimonial materials, such as affidavits, depositions, prior testimony, or confessions;
> [and] [3] statements that were made under circumstances which would lead an
> objective witness reasonably to believe that the statement would be available for use
> at a later trial.

*Id*. at 51-52 (internal quotations and citations omitted).  While the Court declined to adopt any of

these three formulations, the Court noted that the term "testimonial," whatever else it may cover,

"applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former

trial; and to police interrogations."  *Crawford*, 541 U.S. at 68.

In *Crawford*, the Court suggested, but did not definitively rule, that the Confrontation Clause

is limited to regulating the introduction of testimonial hearsay, and has no application at all to the

admission at trial of non-testimonial hearsay.  The Court explained that "[w]here nontestimonial

hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility

in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all

such statements from Confrontation Clause scrutiny altogether."  *Crawford*, 541 U.S. at 68.

Immediately following *Crawford*, the Courts concluded that *Roberts* remained applicable to non-

testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction  between testimonial
> and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only
> to the former category of statements. . . . [U]nless a particular hearsay statement
> qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004). Regardless of whether this reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In *Davis v. Washington*, 126 S. Ct. 2266 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id.* at 2274, and in doing so abrogated *Roberts* in whole. The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id.* (discussing *Crawford*, 541 U.S. at 51). The *Davis* Court explained that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id.* Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered. *See Whorton v. Bockting*, 127 S. Ct. 1173, 1183 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006).

2.    *Analysis*

There is no question that Harrell's statements to the police constitute testimonial hearsay under *Crawford*. As were the statements in *Crawford* deemed to be testimonial, Harrell's statements were custodial statements made in the course of a police interrogation. *See Crawford*, 541 U.S. at

65-66. As the Court has explained, statements to the police "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 126 S. Ct. at 2273-74; *see also*, *Crawford*, 541 U.S. at 68 ("Whatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."). Likewise, there is no question that petitioner had no prior opportunity to cross-examine Harrell.

These conclusions do not end the matter, however. The trial court admitted Harrell's statements pursuant to Rule 804(b)(6). This rule, which codifies the so-called forfeiture by wrongdoing doctrine, provides that the hearsay rule does not bar "a statement offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." MICH. R. EVID. 804(b)(6); *see also*, FED. R. EVID. 804(b)(6) (codifying identical rule). In *Davis*, the Court explicitly recognized the continuing validity of the forfeiture by wrongdoing doctrine notwithstanding *Crawford*:

> [W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in *Crawford*: that "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

*Davis*, 126 S. Ct. at 2280 (citations omitted) (quoting *Crawford*, 541 U.S. at 62).

The *Davis* Court did not explicate the standards applicable to determining whether the forfeiture by wrongdoing exception may be invoked to admit otherwise barred testimonial hearsay. The Court did note, however, that federal courts applying Rule 804(b)(6), and many state courts

applying state law analogues, have applied a preponderance of the evidence standard. *See Davis*, 126 S. Ct. at 2280. In light of this language, the post-*Davis* courts that have considered the issue have applied the general standards developed under Rule 804(b)(6) to post-*Crawford* confrontation claims. *See, e.g.. Hodges v. Attorney General, State of Fla.*, ___ F.3d ___, 2007 WL 3307014, at *7 (11th Cir. Nov. 9, 2007); *United States v. Martinez*, 476 F.3d 961, 966-67 (D.C. Cir. 2007); *United States v. Gray*, 405 F.3d 227, 240-41 (4th Cir. 2005). The Michigan Court of Appeals followed this approach in petitioner's case. *See Ware*, 2005 WL 563216, at *2, slip op. at 2.

In rejecting petitioner's confrontation claim, the court of appeals explained that Harrell had reported to the police that petitioner had threatened those who had witnessed the killing with death if they talked about the incident. Specifically, petitioner told the witnesses "if it gets out I know who to go to" and "I know everybody in this house right now . . . [i]f this shit go any further y'all next." *See id*. Both officers who spoke with Harrell testified that Harrell was visibly frightened by the prospect of testifying against petitioner, and had expressed her fear on a number of occasions. *See id*. In light of this evidence, the court of appeals reasoned, "the trial judge could conclude, by a preponderance of the evidence, that defendant engaged in wrongdoing that was intended to, and did, procure the unavailability of Harrell as a witness." *Id*. The Court should conclude that this determination was reasonable.

Harrell's statements to the police provided sufficient evidence to establish the applicability of the forfeiture by wrongdoing doctrine.[3] She told the police that petitioner had leveled two explicit

---

[3]Although Harrell's statement was hearsay, it was admissible for purposes of determining the applicability of the forfeiture by wrongdoing rule. *Cf. Davis*, 126 S. Ct. at 2280 (internal quotation omitted) (noting some courts have held that under Rule 804(b)(6) "hearsay evidence, including the unavailable witness's out-of-court statements, may be considered.").

threats at those who had witnessed the killing, and that because of these threats she was afraid to testify. These statements were corroborated by the testimony of the investigating officers, who noted that Harrell was visibly frightened. Petitioner highlights the facts that there were not repeated threats, that the single threat occurred at the time of the crime, four months before she gave her statements to the police, and that Harrell had cooperated with the police. None of these facts, however, renders the forfeiture by wrongdoing rule inapplicable. It is well established that a threat of harm or future retaliation constitutes wrongful conduct under the rule. *See United States v. Scott*, 284 F.3d 758, 764 (7th Cir. 2002); *Steele v. Taylor*, 684 F.2d 1193, 1201 (6th Cir. 1982). It is equally clear that the threat need not occur in connection with any particular proceeding, or that a formal charge have been filed. *See Gray*, 405 F.3d at 241; *United States v. Dhinsa*, 243 F.3d 635, 652 (2d Cir. 2001); *State v. Ivy*, 188 S.W.3d 132, 147 (Tenn. 2006). While petitioner may offer a plausible alternative interpretation of the evidence, this does not mean that the trial court's determination was incorrect, or that the court of appeals was unreasonable in concluding that petitioner's threat caused Harrell to be absent. "Given the extensive federal precedent recognizing that the admission of out-of-court statements is appropriate when a defendant has threatened a witness, and the absence of 'clearly established' Supreme Court law limiting the circumstances that constitute forfeiture by misconduct, the court cannot conclude that the trial court's decision was 'contrary to,' or involved an 'unreasonable application of,' clearly established Supreme Court law." *McClarin v. Smith*, No. 05-CV-2478, 2007 WL 2323592, at *12 (E.D.N.Y. Aug. 10, 2007). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Jury Instruction Claim (Claim II)*

Petitioner next claims that he was denied a fair trial when the trial court failed to give a lesser

offense instruction on assault with intent to commit great bodily harm less than murder. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1. *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2. *Analysis*

Petitioner contends that the trial court should have given his requested instruction on the lesser offense of assault with intent to commit great bodily harm less than murder. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for three reasons.

First, although the Eighth Amendment and the Due Process Clause require that a trial court

instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.). Thus, the Michigan Court of Appeals's resolution of this claim was not contrary to, or an unreasonable application of, clearly established federal law, and petitioner is therefore not entitled to habeas relief on this claim.

Second, the jury was instructed on the lesser included offense of second degree murder, but nevertheless convicted petitioner of first degree murder. Second degree murder is a lesser offense than first degree murder, but a more serious offense than assault with intent to commit great bodily harm. As noted by one circuit court, the Supreme Court has recognized that "in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom rung, that error is harmless provided the jury returns a guilty verdict for an offense higher up rather than

for an intermediate offense which is also charged." *Geschwendt v. Ryan*, 967 F.2d 877, 884 (3d Cir. 1992) (discussing *Schad v. Arizona*, 501 U.S. 624, 647-48 (1991)); *accord Six v. Delo*, 94 F.3d 469, 478 (8th Cir. 1996), *petition for cert. filed*, No. 96-8471 (U.S. Mar. 31, 1997); *Allridge v. Scott*, 41 F.3d 213, 220 (5th Cir. 1994); *Slade v. Taylor*, 689 F. Supp. 595, 599 (E.D. Va. 1988). Accordingly, because petitioner was convicted of the greater offense of first degree murder over the intermediate offense of second degree murder, petitioner was not prejudiced by the trial court's failure to instruct on assault with intent to commit great bodily harm, and he is not entitled to habeas relief.

Finally, petitioner was not entitled to the instruction under state law. As the court of appeals explained, the assault crime which petitioner sought an instruction on "presupposes that the defendant's act has not caused the death of the victim." *Ware*, 2005 WL 563216, at *3, slip op. at 3. If the evidence is uncontested that the defendant caused the victim's death, "the court may not instruct on merely assaultive offenses. For an instruction on an assaultive offense to be appropriate, there must have been an independent, intervening cause of death." *Id*. In petitioner's case, the forensic pathology expert testified that the victim's death was caused by a high-velocity blow to the head, which petitioner admittedly delivered, and there was no evidence presented of any intervening cause of death. *See id*. Thus, under Michigan law, petitioner was not entitled to an instruction on assault with intent to commit great bodily harm. *See Hopp v. Burt*, No. 03-10153, 2007 WL 162248, at *6 (E.D. Mich. Jan. 16, 2007) (Lawson, J.); *People v. Bailey*, 451 Mich. 657, 671-72, 549 N.W.2d 325, 332 (1996).

For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on his instructional error claim.

F.      *Ineffective Assistance of Counsel*

Petitioner next contends that his trial counsel was ineffective in failing to properly investigate and present at trial three witnesses. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the

18

reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.  *Analysis*

Petitioner contends that his trial counsel was ineffective for failing to produce at trial three witnesses: Ezell Robinson, Jr., Deandrea Williams, and Vincent Delks. The Court should disagree.

Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment).

At the outset, although the record does not establish what steps counsel actually took with respect to the three witnesses, the record does belie petitioner's implicit assertion that counsel utterly failed to adequately prepare. Although counsel presented no witnesses, counsel vigorously presented a self-defense and lesser included offense case to the jury through cross-examination and

closing argument. The record also shows that counsel actively sought to obtain evidence in support of the self-defense argument. Prior to trial, counsel informed the court that it had located and interviewed a witness, Lamacia Teague, who was present at the murder and who could testify that Rankins pulled a knife on petitioner. Although Teague had been subpoenaed, he did not show up for court and counsel requested an adjournment. *See* Tr. dated 8/4/03, at 26-27. A bench warrant was issued for Teague, and an officer attempted to locate him through a LEIN check and contacting his relatives. *See* Trial Tr., dated 8/6/03, at 197-99. As of the following day, Teague had still not been located. *See id.*, dated 8/7/03, at 4. Thus, it is clear that counsel was actively pursuing evidence and witnesses to support petitioner's self-defense claim.

This aside, petitioner has failed to establish that he was prejudiced by the absence of Williams's and Delks's testimony. Relying on Williams's statement to the police, petitioner contends that Williams could have impeached Harrell's statement that Williams was in the house at the time of the murder. Williams's statement, however, does not support this contention. While Williams told the police that she did not know anything about the murder of Rankins, nothing in the statements says that she was not in fact at the house at the time of the murder. *See* Def.-Appellant's Supp. Br. on Appeal, in *People v. Ware*, No. 251048 (Mich. Ct. App.), Appx. A, Witness Statement of Deandrea Williams. Likewise, Vincent Delks could not have provided any useful testimony. He told the police that he was outside the house working, and did not know who was inside at the time. He did not witness the murder, but told the police that he had heard around the neighborhood that petitioner had killed Rankins. *See id.*, Appx. B, Witness Statement of Vincent Delks.[4]

---

[4]Delks did say in his statement that Rankins was still breathing when Delks went to the house after hearing about the beating, and that when he returned to check on him again Rankins was dead. This statement does not create a reasonable probability of a different outcome,

Petitioner's third uncalled witness, Ezell Robinson, did not give a statement to the police. Nor was his testimony preserved in state court through affidavit, deposition, or evidentiary hearing, and petitioner has provided no affidavit from Robinson here. Petitioner contends that, had counsel interviewed Robinson and called him as a witness, Robinson would have testified that Harrell was not present at the house, thus discrediting her testimony (through the witness statements read to the jury). Petitioner also contends that Robinson would have testified consistent with his version of events, supporting his claim of self-defense. The Court should conclude that an evidentiary hearing is necessary with respect to this claim.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is necessary under Rule 8. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's

---

however. As explained above in connection with petitioner's jury instruction claim, although there was some dispute as to when, precisely, Rankins died, there was no evidence of any intervening cause of death, and no evidence to rebut the medical examiner's conclusion that Rankins died from the blow he received from petitioner.

factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citations and footnote omitted).

In this case, an evidentiary hearing is necessary because the record as it exists is inadequate to permit the Court to determine either whether counsel rendered deficient performance or whether petitioner was prejudiced by counsel's performance. With respect to the former, the record does not reveal what precisely petitioner told counsel about Robinson; what, if any, steps counsel took to investigate Robinson and his testimony; and, if so, why he chose not to call Robinson as a witness. Without this information, it is not possible to determine whether counsel rendered constitutionally deficient performance by failing to present Robinson as a witness.

With respect to the latter, the record reveals only petitioner's assertion that Robinson would have testified and the substance of his purported testimony. It is impossible to determine with any reasonable degree of certainty whether Robinson would have testified at all. Robinson, like the other witnesses, may have been reluctant to testify out of fear. Further, by all the evidence introduced at petitioner's trial, Robinson himself was a member of the same drug network as petitioner, *see* Trial Tr., dated 8/6/03, at 53, and by Harrell's account Robinson helped dispose of Rankins's body, rendering Robinson criminally liable as an accessory after the fact. Thus, any testimony by Robinson potentially could have exposed him to criminal liability on either front. At a minimum it is questionable that Robinson would have chosen to so incriminate himself in order to exculpate petitioner. If Robinson would have testified at trial, however, and if he would

have testified consistent with petitioner's story, this may establish prejudice. The evidence at trial was a credibility contest between the police statements of Harrell and petitioner, neither of whom testified at trial. In her second statement to the police–the one in which she implicated petitioner–Harrell stated:

> Reno was serving a customer at the dining room table, then about an hour later Calvin pulled up in the alley across the street. Man [Ezell Robinson] went across the street and started talking to Calvin, so when the house did clear Man went on the porch and whistled then Calvin came in the house. When he came in he went to the dining room table and started talking to Reno. Calvin told him "I been getting complaints that you been going in the packs, plus I heard you short all week". So Reno pulled his bags out and poured them on the table. Rock cocaine came out. Calvin started counting the rocks and said "Nigga, you $200 short". And Reno said "I don't know how that happened". Then Calvin turned and walked away like he was walking out the door. He reached down and grabbed a white table leg from the corner by the front door. Calvin then walked back over to Reno. I saw Calvin swing the table leg and hit Reno in the head. Reno fell halfway on the couch and floor. I saw Reno twitching. He was holding a blunt and he kept twitching, then he stopped and he wasn't moving at all."

Trial Tr., dated 8/6/03, at 178-79. Comparably, in his own statement to the police petitioner recounted:

> Tommy was in the alley with me across the street from the house.
> . . . .
> So I went over to the house and I asked him can I see his bags of crack, and I saw that he was $250 short. Tommy told me what he was supposed to have. The money did not total the crack that was sold. I told him that this is bullshit. He put his bags back in his pocket and he stood up. That's when I fired on him. He staggered onto the couch but he did not fall. When he stood back up he had a knife in his hand. He had the knife up in the air to stab me. I saw, I saw the, the stick next to the wall and I grabbed it and I hit him in the head. I saw him fall to the floor and I threw the stick to Man.

Id. at 52-53. Notably, Harrell's statement is corroborated in a number of particulars by petitioner's own statement, including where petitioner arrived (in the alley), the amount that Rankins was short (200-some dollars), the general substance of the conversation (that Rankins was short on the money

and that petitioner had been getting complaints), and most importantly petitioner's actions after the discussion (that petitioner turned and walked toward the door, found the table leg, and picked it up, and swung it one time at Rankins's head).

Harrell's and petitioner's statements differ only with respect to the self-defense aspects of the incident. In Harrell's version petitioner simply turned toward the door, saw the table leg, and picked it up and struck Rankins with it. In petitioner's version, after he initially assaulted Rankins, Rankins pulled out a knife and came after petitioner. Only at that point did petitioner pick up the table leg and hit Rankins. According to petitioner, Robinson would have supported this version of events. As a legal matter petitioner could argue, as he did, that he initially used non-lethal force and that, when Rankins responded with potentially lethal force by pulling a knife he was justified in defending himself with lethal force. *See People v. Johnson*, 75 Mich. App. 337, 343 n.3, 254 N.W.2d 667 n.3 (1977); MICH. CRIMINAL JURY INSTRUCTION 2D § 7.19. Likewise, Robinson's testimony could have supported petitioner's claim of imperfect self-defense, which is available to mitigate murder to voluntary manslaughter where the defendant would have been entitled to use deadly force in self-defense but for his being the initial aggressor. *See People v. Kemp*, 202 Mich. App. 318, 323, 508 N.W.2d 184, 187 (1993). Further, even in the absence of perfect or imperfect self-defense, given the sequence of events reflected in petitioner's statement the jury likely could not have concluded that he acted with premeditation and deliberation sufficient to constitute first degree murder if it accepted his version of events. Finally, although there was no doubt that petitioner struck the fatal blow, the evidence against petitioner supporting his first degree murder conviction (as opposed to a conviction for second degree murder or manslaughter, or an acquittal based on self-defense), was less than overwhelming, consisting solely of Harrell's unsworn, out-of-

court statement to the police.  *See Strickland*, 466 U.S. at 696 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").  In short, without conducting an evidentiary hearing the Court can determine neither whether petitioner's counsel rendered deficient performance with respect to his failure to call Robinson as a witness, nor whether petitioner was prejudiced by counsel's failure.  Accordingly, an evidentiary hearing is necessary under Rule 8.

Likewise, an evidentiary hearing is  permitted in this case under § 2254(e)(2).  That section provides that, "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met.  28 U.S.C. § 2254(e)(2).  In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[5] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430.  Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432.  Respondent contends that petitioner was not diligent in seeking an evidentiary hearing because he merely requested such a hearing in his supplemental *pro se* brief in the Michigan Court of Appeals rather than filing a motion for remand in accordance with Rule 7.211(C)(1), which provides:

> Within the time provided for filing the appellant's brief, the appellant may move to remand to the trial court.  The motion must identify an issue sought to be

---

[5]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d).  Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

reviewed on appeal and show:

> (i) that the issue is one that is of record and that must initially be decided by the trial court; or

> (ii) that development of a factual record is required for appellate consideration of the issue.

> A motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing.

MICH. CT. R. 7.211(C)(1)(a).

The problem with respondent's argument is that the record reveals that petitioner did, in fact, file a separate motion to remand supported by his own affidavit detailing what he claims to have told counsel about the missing witnesses and what their purported testimony would have been. Respondent's Rule 5 filing includes a packet of materials related to petitioner's appeal in the Michigan Court of Appeals. That packet of materials includes not only petitioner's supplemental *pro se* brief, but also a motion to remand for an evidentiary hearing along with a supporting affidavit. The Michigan Court of Appeals treats such a motion for remand by a *pro se* appellant the same as a motion filed by an attorney under Rule 7.211(C)(1). *See People v. Lewis*, No. 252508, 2005 WL 711762, at *6 (Mich. Ct. App. Mar. 29, 2005) (per curiam) (footnote omitted) ("Defendant Lewis, acting *in propria persona*, made a motion for a new trial or *Ginther* hearing raising the issue of ineffective assistance of counsel, thus preserving the issue for this Court's review.").[6] And in petitioner's case, the court of appeals explicitly denied the motion in a separate order. This denial

---

[6]Petitioner filed his *pro se* brief pursuant to Standard 11 of the Michigan Supreme Court's Administrative Order 1981-7, 412 Mich. lxv, lxxxix (1981), *reaffirmed by* A.O. 1985-3, 421 Mich. lxvii (1985). Standard 11 allows a supplemental *pro se* brief, but does not explicitly address the time for filing such a brief nor the rules regarding accompanying motions. After petitioner filed his brief, but prior to the court of appeals's decision, the Supreme Court superceded Standard 11 with Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004). Standard 4 now explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions.

was not on the basis of any procedural failing on the part of petitioner, but on the court of appeals's view that an evidentiary hearing was not necessary on the merits. *See People v. Ware*, No. 251048 (Mich. Ct. App. Nov. 1, 2004) (order).

Thus, petitioner sought an evidentiary hearing on his claims in connection with appeal through a properly filed motion for remand, but was denied one by the state courts. The state court's denial was not based on petitioner's failure to comply with any procedural rule. Thus, he did not fail to develop the factual basis of his claim through some fault of his own. *See Gossard v. Bell*, No. 05-40267, 2006 WL 2460768, at *17 (E.D. Mich. Aug. 23, 2006) (Gadola, J., adopting R&R of Komives, M.J.) (evidentiary hearing not precluded by § 2254(e)(2) where petitioner filed a *pro se* motion to remand in Michigan Court of Appeals); *see also*, *Mayes v. Gibson*, 210 F.3d 1284, 1288 n.2 (10th Cir. 2000) (*Michael Williams* standard satisfied where petitioner "raised the need for an evidentiary hearing" on direct appeal and in collateral review proceedings); *Morales v. Coyle*, 98 F. Supp. 2d 849, 893 (N.D. Ohio 2000) (*Michael Williams* standard satisfied where petitioner "sought an evidentiary hearing in state court, which was denied[.]").

Accordingly, the Court should conclude that an evidentiary hearing is necessary to resolve petitioner's claims that counsel was ineffective for failing to call Ezell Robinson as a witness, and that an evidentiary hearing is permitted on this claim under § 2254(e)(2). If the Court agrees with this recommendation, the Court must appoint counsel to represent petitioner, *see* Rule 8(c), 28 U.S.C. foll. § 2254, and the Court may either conduct the hearing itself or refer the matter back to me for that the purpose, *see* Rule 8(b).

G.      *Sufficiency of the Evidence (Claim IV)*

Finally, petitioner contends that there was insufficient evidence to support his conviction for

27

first degree murder. Specifically, he contends that there was insufficient evidence of his premeditation and deliberation, and at most the evidence supports a verdict of voluntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense

raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Accordingly, it is necessary to examine the elements of second degree murder under Michigan law.

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* Mich. Comp. Laws § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). Certain additional elements elevate second degree murder to first degree murder, which is punishable by a mandatory term of nonparoleable life imprisonment. These include murder done with premeditation and deliberation or committed in the course of certain enumerated felonies. *See* Mich. Comp. Laws § 750.316(1)(a), (b).

Under Michigan law, "[p]remeditation is measured in time; time to permit a reasonable person to subject the nature of his response to a second look." *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). "The elements of premeditation and deliberation may be

inferred from the circumstances surrounding the killing." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995). Relevant factors include the relationship of the parties, the defendant's actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. *See id.*; *Brown*, 137 Mich. App. at 407, 358 N.W.2d at 597. Further, because first degree murder requires premeditation and deliberation rather than simply malice aforethought (as is required for second degree murder), the actor must have the specific intent to kill in order to be convicted of first degree murder. *See People v. Hart*, 437 Mich. 898, 898, 465 N.W.2d 328, 328 (1991); *People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 715 n.102, 299 N.W.2d 304, 320 n.120 (1980). As with premeditation, "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)).

2.   *Analysis*

Petitioner contends that the evidence at trial fails to show that he acted with premeditation and that he intended to kill Rankins. He argues that the evidence is uncontroverted that he merely went to Rankins's home to physically assault him, not to kill him, and points out that he only struck Rankins once with the table leg. The Michigan Court of Appeals rejected this claim. The court reasoned that Harrell's statement indicated that petitioner turned to the door, then found the table leg and struck Rankins with enough force to kill him. The court also relied on the fact that, according to Harrell, petitioner returned to the home to brag about what he had done. *See Ware*,

2005 WL 563216, at *4, slip op. at 5.  The court concluded that, "[v]iewing this evidence in a light most favorable to the prosecution, there was sufficient circumstantial evidence to allow the jury to infer that the killing was willful, deliberate, and premeditated." *Id*.  The Court should conclude that this determination was reasonable.

Although the evidence against petitioner, specifically as it related to his intent, was not particularly strong, this Court does not reweigh the evidence.  The question before this Court is only whether the Michigan Court of Appeals reasonably concluded that a rational trier of fact could have found that petitioner acted with premeditation and deliberation, viewing the evidence in the light most favorable to the prosecution.  Here, in the light most favorable to the prosecution, the evidence showed that petitioner went to Rankins's house for the specific purpose of assaulting him.  The evidence also showed that petitioner had time to deliberate, as he turned toward the door before picking up the table leg and striking Rankins.  The evidence further established that petitioner struck Rankins in the head with a heavy instrument with sufficient force to cause death, and that petitioner later bragged about what he had done.  From this circumstantial evidence, a rational trier of fact could have concluded that petitioner had time to reflect on his actions before picking up the table leg, and that when he swung he did so intending to kill Rankins.  *Cf. People v. Jackson*, 171 Mich. App. 191, 200, 429 N.W.2d 849, 853 (1988).  Further, there was evidence, through Harrell's statement, that petitioner attempted to conceal the crime, which also provides circumstantial evidence of his intent.  *See People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159, 163 (2003).

In short, there was sufficient circumstantial evidence presented at trial for a rational trier of

fact to conclude that petitioner premeditated and intended the killing of Rankings.[7]  Thus, the

Michigan Court of Appeals's determination was a reasonable application of *Jackson v. Virginia*, and

the Court accordingly should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Conclusion*

       In view of the foregoing, the Court should conclude that an evidentiary hearing is necessary

with respect to petitioner's claim that his attorney was ineffective for failing to call Ezell Robinson

as a witness.  Accordingly the Court should appoint counsel for petitioner and order an evidentiary

hearing on this claim.  With respect to petitioner's other claims, the Court should conclude that the

state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or

which involved an unreasonable application of, clearly established federal law.  Accordingly, the

Court should deny petitioner's application for the writ of habeas corpus with respect to these claims.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

       The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver

of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

---

[7]I note that this analysis of petitioner's sufficiency of the evidence claim holds even if the Court rejects my recommendation regarding petitioner's confrontation claim and concludes that Harrell's statements to the police should not have been admitted.  While the erroneous admission of evidence may, or may not, entitle a habeas petitioner or appellant to relief on that basis, in assessing the sufficiency of the evidence the Court is required to weigh all of the evidence, even that evidence which was improperly admitted.  *See United States v. Carneglia*, 47 Fed. Appx. 27, 34-35 (2d Cir. 2002); *United States v. Castaneda*, 16 F.3d 1504, 1510 (9th Cir. 1994); *cf. Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988) (in assessing whether the evidence was sufficient for purposes of determining whether retrial is permitted under the Double Jeopardy Clause, court looks at all of the evidence admitted, even that which was improperly admitted).

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/14/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 14, 2007.

s/Eddrey Butts
Case Manager